[Crim. No. 8352. Second Dist., Div. Four. Jan. 29, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ARTHUR HALL, Defendant and Appellant.

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.

Cary G. Branch, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Robert H. O'Brien, Deputy Attorney General, for Plaintiff and Respondent.

BISHOP. J. pro tem.*—Charged in an information with the murder of one Adell Reed and with the prior conviction of two felonies, defendant was found guilty of manslaughter and admitted the conviction of the prior offenses charged. His motion for a new trial was denied and he was sentenced to state prison for the term prescribed by law. We have concluded that none of the contentions made on his behalf on appeal from the judgment is well taken and are affirming it.

We do not have a difficult problem on this appeal. Beyond any doubt Adell Reed died as the result of a number of severe knife cuts and beyond any doubt they were inflicted by defendant. ■ The principle is therefore applicable which is expressed in *People* v. *Todd* (1957) 154 Cal.App.2d 601, 607 [317 P.2d 40] : "The effect of sections 187-189 and Penal Code, section 1105, construed together, is that every killing is murder unless the defendant proves the contrary. (*People* v. *Wells*, 10 Cal.2d 610 [76 P.2d 493].)" The statement just quoted is supported in the case that it cites, but with an amplification: the burden on the defendant is that of "raising a reasonable doubt as to his being guilty of murder as distinguished from manslaughter or justifiable homicide," (10 Cal.2d 610, 623), and defendant may take advantage of any evidence in the case as well as that which he produces.

The case was tried before a jury which found him guilty, not of murder, but of manslaughter. On this appeal it is contended the evidence is insufficient to prove manslaughter because it establishes a justifiable homicide in that it was committed in self-defense. We find, however, that the jury, whose responsibility it was to pass upon the credibility of witnesses and to weigh the evidence—had ample reason to view with skepticism the claim of self-defense. In spite of the tale of repeated threats made by the victim Adell Reed that he

---

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.

would cut out defendant's stomach and would kill him, Mrs. Reed and defendant, who had been living together for some two to three months as husband and wife, received Mr. Reed as a caller about midnight before the day of the homicide, shared some beer with him; then Mrs. Reed left the two together for an hour or so. She returned and got in a row with Mr. Reed who cut her. Defendant left to call the police. By the time he returned, Reed had gone taking with him some money the defendant had given to Mrs. Reed. Defendant went away ostensibly to buy some "barbecue." Somebody hailed him, according to his story on the witness stand, as he was driving; he did not know who it was but stopped and backed up. Reed approached close to the driver's side of the car. Defendant got out the other side not seeing that Reed had a knife until Reed took a swing at him. They struggled, defendant tried to grab the hand that held the knife and in so doing knocked it out of Reed's hand. Defendant recovered the knife and, in evading Reed's attempt to throw his coat over defendant's head, inflicted the wounds which caused Reed's death.

Weighing the testimony just sketched the jury may well have said: It was not in self-defense that defendant, a 6-foot, 180-pound boxer, armed with a knife, killed Reed, a 5-foot-6 man, weighing 150 pounds, who at the time of the actual killing had been disarmed of his knife and was then armed only with his coat. Certainly we cannot say, as a matter of law, self-defense was proved or that the jury should at least have been doubtful but that it was.

Another of defendant's contentions is that the court erred in the order striking this answer made by defendant when he was testifying about his meeting with Reed in the early hours of the morning: "Well, we discussed this money, and then these threats came up again, and that was when I got out from the car, because I—it looked as if he wanted to come in the car, and the window was down." The order was made in response to the People's motion that the answer "be stricken as a conclusion by the witness." It was, of course, error to strike the entire answer even if "it looked as if he wanted to come in the car" was mildly objectionable as a "conclusion." The error, however, was not prejudicial. Admonished by defense counsel not to "give us any conclusions" defendant went on answering questions that gave the facts that the defendant had interpreted as making it look as though Reed wanted to come into the car.

 Several contentions are made respecting the giving of these instructions:

"Manslaughter is the unlawful killing of a human being without malice. One kind of manslaughter, the definition of which is pertinent to this case, is voluntary manslaughter, being that which is committed upon a sudden quarrel or heat of passion."

"In arriving at a verdict in this case, the subject of penalty or punishment is not to be discussed or considered by you, as that is a matter which under our law must be considered and determined in a separate proceeding."

The criticism of these instructions is that, by the fact that he gave them, the trial judge implied in the one case defendant was guilty of manslaughter because he declared the definition of manslaughter was "pertinent to this case" and in the other the implication was that the defendant had been proven guilty for then only does the question of punishment come up. We see no possibility that the jury understood either instruction as being in conflict with that also given which ended with the sentence: "If an instruction applies only to a state of facts which you find does not exist, you will disregard the instruction."

 The same observation is called for by the contention the trial court erred in giving four instructions concerning confessions. These instructions defined confession and admission; stated when they were involuntary; declared that only voluntary statements were to be considered; and ended with the admonition to view with caution the testimony of any witness which purports to relate an oral admission or an oral confession of the defendant. Within the scope of these instructions fell the testimony of Officer Leone who had halted Mrs. Reed and defendant when they came up to where Reed was lying, either dead or dying: ". . . the defendant approached me and, gesturing with his—both arms (indicating), he said, 'I did it. Here I am.' " As a witness the defendant answered "Yes, I did," to the question "And did you immediately tell the police that you were the person who had done this?" ("this" being the infliction of the fatal cuts on the body of Mr. Reed). Whether the defendant's statement that he had inflicted the fatal wounds was a "confession" or not seems to us to be of no significance; it was most certainly an admission. We see no reason to reverse the judgment because this word "confession" was left in the instructions as given.

██ The final contention is that the trial court should have instructed the jury that: "Where the jury has a reasonable doubt whether the homicide was justifiable they must give the defendant the benefit of that doubt and acquit him." This would have been a proper instruction in this case but the record discloses no request by the defendant that this refinement of the usual instruction respecting reasonable doubt be given. As the standard instructions were given and reenforced later by an instruction that any evidence susceptible of two constructions should be interpreted in favor of the innocence of the defendant, we see no reason to believe that the giving of this additional instruction would have had any effect on the jury's conclusion that the defendant killed Adell Reed under circumstances that warranted his conviction of manslaughter.

The judgment is affirmed. The appeal from the order denying the defendant a new trial is dismissed.

Burke, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied February 19, 1963, and appellant's petition for a hearing by the Supreme Court was denied March 27, 1963.